# UNITED STATES COURT OF APPEAL FOR THE NINTH CIRCUIT

KINGS COUNTY, a political
subdivision of the State of California;
KINGS COUNTY FARM BUREAU, a
California nonprofit corporation;
CALIFORNIA CITIZENS FOR HIGH-
SPEED RAIL ACCOUNTABILITY, a
California nonprofit corporation;
COMMUNITY COALITION ON
HIGH-SPEED RAIL, a California
nonprofit corporation; CALIFORNIA
RAIL FOUNDATION, a California
Nonprofit Corporation; and
TRANSPORTATION SOLUTIONS
DEFENSE AND EDUCATION FUND,
a California Nonprofit Corporation;

        Petitioners

v.

SURFACE TRANSPORTATION
BOARD; UNITED STATES OF
AMERICA;

        Respondents

No.

 

PETITION FOR REVIEW
[28 U.S.C. §§ 2321, 2342; FRAP 15]

Douglas Carstens
Chatten-Brown & Carstens
2200 Pacific Coast Highway, Unit 318
Hermosa Beach, CA 90254
(310) 798-2400
dpc@cbcearthlaw.com

Attorney for Petitioners Kings County,
Kings County Farm Bureau, and
Californians for High-Speed Rail
Accountability

Stuart M. Flashman
Law Offices of Stuart M. Flashman
5626 Ocean View Drive
Oakland, CA 94618-1533
(510) 652-5373
stu@stuflash.com

Attorney for Petitioners California Rail
Foundation, Community Coalition on
High-Speed Rail, and Transportation
Solutions Defense and Education Fund

1. Kings County, a subdivision of the State of California, Kings County Farm Bureau, a California nonprofit corporation ("KCFB"), California Citizens for High-Speed Rail Accountability, a California nonprofit corporation ("CCHSRA"), Community Coalition on High-Speed Rail, a California nonprofit corporation ("CC-HSR"), California Rail Foundation, a California nonprofit corporation ("CRF"), and Transportation Solutions Defense and Education Fund, a California nonprofit corporation ("TRANSDEF," and the foregoing, collectively, "Petitioners") hereby petition the Court for review of the Order of the Surface Transportation Board ("STB") on the Petition for Declaratory Order ("Petition for Order") of Real Party in Interest California High-Speed Rail Authority ("CHSRA"), an agency of the State of California (Financial Docket No. 35861) entered on December 12, 2014. ("STB Order[1]"), and of the STB's decision of May 4, 2015 denying reconsideration of the earlier decision.

2. The Petition for Order sought a declaration from the STB that injunctive relief in any state court action brought under the California Environment Quality Act ("CEQA") pertaining to CHSRA's certification of a Final Environmental Impact Report ("FEIR") for the Fresno to Bakersfield segment of its proposed high-speed rail system (the "HSR Project") was preempted under the provisions of the Interstate Commerce Commission Termination Act ("ICCTA").

3. On or about December 12, 2014, the STB issued its order on CHSRA's Petition for Order. The STB Order went well beyond what was requested of it and declared that CEQA was preempted for all purposes under the ICCTA

---

[1] A copy of the STB Order is attached hereto as Exhibit "A".

3

for the Fresno to Bakersfield segment.  (See STB Order at p.15.)  On or about December 29, 2014, Petitioners and others filed Petitions for Reconsideration of the STB Order.  On or about May 4, 2015, the STB decided, on a 1-1 vote, to refuse to grant the Petitions for Reconsiderations,[2] thereby rendering the order of December 12, 2014 final.

4.  Because all of the Petitioners herein reside in the State of California, under 28 U.S.C. §2343, jurisdiction is proper in the Ninth Circuit Court of Appeal.

5.  Relief is sought on the basis that the STB's order, as affirmed and made final by the denial of the petition for reconsideration, was in error in that:

    a.  It ignores the fact that CEQA is not primarily a regulatory statute, but an informational statute intended to assure that the decision makers, and the public, are properly informed of the significant environmental consequences of a pending decision and ways in which those consequences could feasibly be mitigated or avoided, and that the CHSRA had the authority under CEQA to find any mitigation measure or alternative identified through the environmental review process legally infeasible if it would conflict with an STB ruling.  For that reason, and parallel to the STB's allowing the application of the National Environmental Policy Act ("NEPA"), CEQA's provisions likewise should continue to apply and not be preempted;

    b.  It ignores the fact that the project applicant herein is not a typical private rail line owner but an agency of the State of

_____

[2] A copy of that order,which was served on May 5, 2015, is attached hereto as Exhibit B.

California, and consequently, under *Nixon v. Missouri Municipal League* (2004) 541 U.S. 125, preemption should not apply because the ICCTA does not clearly express an intent to interfere with a sovereign power of a state to oversee its own subordinate governmental entities; and

c. Under the market participant exception to federal preemption under the Commerce Clause, a state's actions to control the behavior of its own component entities, as would a private party, are not preempted. In this instance, the California Legislature created CHSRA as a component agency within the state's government and intended CEQA to apply to this agency as a state-run enterprise. For that reason as well, CEQA should not be preempted.

d. It violates Petitioners' constitutional right to seek redress of grievances in violation of the federal Constitution (First Amendment) and the California Constitution (Art. I, §3).

e. It violates the separation of powers doctrine under both the federal and California Constitutions.

f. It violates the Tenth Amendment to the federal Constitution by interfering with the sovereign powers of the State of California.

6. CHSRA had also sought a determination in the California Court of Appeal for the Third Appellate District that application of CEQA to its high-speed rail projects was preempted by the ICCTA. That request was made in the context of an appeal that included Petitioners TRANSDEF, CRF, and CC-HSR from the judgment of the Sacramento County Superior Court granting in part a petition for writ of mandate under CEQA regarding a

Program-level Environmental Impact Report ("PEIR")[3] for the San Francisco to Merced segment of CHSRA's high-speed rail project. The Court of Appeal, after full briefing of the issue, issued a published decision, *Town of Atherton et al. v. California High Speed Rail Authority* (2014) 228 Cal.App.4[th] 314, which concluded that application of CEQA to the HSR Project was not preempted by the ICCTA, based on the market participant exception to preemption under the commerce clause. CHSRA did not seek review of that decision by the California Supreme Court.

7. CHSRA, and others, asked the California Supreme Court to depublish the *Town of Atherton* decision. On October 29, 2014, the California Supreme Court denied the request for depublication. That decision is therefore final.

8. On September 29, 2014, in a case not involving the HSR Project, the California First District Court of Appeal issued a published decision in the case *Friends of Eel River et al. v. North Coast Rail Authority et al.* (2014) 230 Cal.App.4[th] 85. That decision broadly concluded that application of CEQA to public rail projects was preempted under the ICCTA. On December 10, 2014, the California Supreme Court granted review of the Court of Appeal's decision, effectively depublishing the *Friends of Eel River* case, and review of that case is currently pending before the California Supreme Court, with briefing expected to be completed by the beginning of August. (Case number S222472.) The California Supreme Court's decision on review is expected to resolve the conflict between the *Friends of Eel River* and *Town of Atherton* decisions.

9. On or about February 9, 2015, Petitioners Kings County, KCFB, CCHSRA, CRF, and TRANSDEF, along with Kern County, filed a petition

---

[3] The document was issued as a Program EIR/Program EIS. However, the state court challenge pertained solely to the EIR.

for review of the STB's December 12, 2014 decision in this Court. (Case number 15-70386.) On or about the above-same date, Dignity Health, a California nonprofit public benefit corporation, also filed a petition for review, but in the District of Columbia Circuit. (Case number 15-1030.)

10. On or about March 3, 2015, the STB filed a motion to dismiss case number 15-1030 for lack of jurisdiction. On or about May 4, 2015, the Court of Appeal granted the motion, and the case was dismissed without any ruling on the merits.

11. On or about March 4, 2015, the STB filed a motion to dismiss case number 15-70386 for lack of jurisdiction. On or about June 11, 2015, the Court of Appeal granted the motion, and the case was dismissed without any ruling on the merits.

12. For the above reasons, Petitioners seek the following:

    a. An order reversing the orders issued by the STB and remanding the matter with direction that the STB enter an order recognizing that, for the reasons presented above, application of CEQA to the CHSRA for both the present Fresno to Bakersfield segment and other portions of the high-speed rail system authorized by the Legislature are not preempted by the ICCTA.

    b. A stay of any effect of the STB Order pending this Court's final determination on the merits.

Dated:  June 11, 2015

Douglas Carstens
Chatten-Brown & Carstens
2200 Pacific Coast Hwy., Ste 318
Hermosa Beach, CA 90254

Attorney for Petitioners Kings County
and California Citizens for High-Speed
Rail Accountability

Stuart M. Flashman
Law Offices of Stuart M. Flashman
5626 Ocean View Drive
Oakland, CA 94618-1544

Attorney for Petitioners Community
Coalition on High-Speed Rail,
California Rail Foundation, and
Transportation Solutions Defense and
Education Fund

By: S/ Stuart M. Flashman

# Exhibit A

44072     SERVICE DATE – LATE RELEASE DECEMBER 12, 2014
EB

SURFACE TRANSPORTATION BOARD

DECISION

Docket No. FD 35861

CALIFORNIA HIGH-SPEED RAIL AUTHORITY—PETITION FOR DECLARATORY
ORDER

Digest:[1]  The Board concludes that 49 U.S.C. § 10501(b) preempts application of the
California Environmental Quality Act, to the extent discussed below, to the construction
of a high-speed passenger rail line between Fresno and Bakersfield, Cal.

Decided:  December 12, 2014

On October 9, 2014, the California High-Speed Rail Authority (Authority) filed a petition
requesting that the Board issue a declaratory order regarding the availability of injunctive
remedies under the California Environmental Quality Act (CEQA) to prevent or delay
construction of an approximately 114-mile high-speed passenger rail line between Fresno and
Bakersfield, Cal. (the Line).  The request for a declaratory order will be granted, as discussed
below.

BACKGROUND

The Authority's petition concerns construction of the Line, which would be the second
section of the planned statewide California High-Speed Train System (HST System).  The HST
System would, when completed, provide high-speed intercity passenger rail service over more
than 800 miles of new rail line throughout California.  The Board found in 2013 that it has
jurisdiction over the HST System.  Cal. High-Speed Rail Auth.—Constr. Exemption—in
Merced, Madera & Fresno Cntys., Cal. (HST System Jurisdiction Decision), FD 35724, slip op.
at 2 (STB served Apr. 18, 2013) (Vice Chairman Begeman concurring in part and dissenting in
part); Cal. High-Speed Rail Auth.—Constr. Exemption—in Merced, Madera & Fresno Cntys.,
Cal. (Merced-to-Fresno), FD 35724, slip op. at 12-15 (STB served June 13, 2013) (Vice
Chairman Begeman concurring in part and dissenting in part and Commissioner Mulvey
concurring).  The Board has granted petitions for exemption, subject to environmental and other
conditions, permitting construction of the first segment of the HST System, between Merced and
Fresno, Cal., and for the Line.  Id. at 17-28; Cal. High-Speed Rail Auth.—Constr. Exemption—

---

[1]  The digest constitutes no part of the decision of the Board but has been prepared for the
convenience of the reader. It may not be cited to or relied upon as precedent.  Policy Statement
on Plain Language Digests in Decisions, EP 696 (STB served Sept. 2, 2010).

in Fresno, Kings, Tulare, & Kern Cntys., Cal. (Fresno-to-Bakersfield), FD 35724 (Sub-No. 1) (STB served August 12, 2014) (Vice Chairman Miller concurring and Commissioner Begeman dissenting). The Authority states that it has commenced work on the Merced to Fresno segment and is currently in the process of implementing and/or procuring construction contracts for a majority of the Line.

In its petition, the Authority requests that the Board issue an expedited declaratory order finding that CEQA injunctive remedies are not available with respect to the Line. The Authority states that seven lawsuits have been filed challenging its compliance with CEQA with respect to the Line and that the petitioners seek injunctive remedies under CEQA that would prevent or delay the Authority's ability to proceed with construction of the Line. The Authority argues that 49 U.S.C. § 10501(b) preempts such CEQA remedies because, if successful, injunctive relief would enjoin construction of a Board-authorized project. The Authority asserts that it completed the CEQA environmental review and documentation process for the Line in May 2014. Therefore, according to the Authority, the Board need not address whether CEQA is generally preempted with respect to the Line; rather the Board need only address whether injunctive remedies under CEQA that would result in a work stoppage are available as a remedy in the CEQA enforcement lawsuits that have been filed against the Authority.

The Authority notes that the Board has previously found that § 10501(b) preempts CEQA with respect to a line subject to Board jurisdiction, citing DesertXpress Enterprises, LLC—Petition for Declaratory Order, FD 34914 (STB served June 27, 2007), and North San Diego County Transit Development Board—Petition for Declaratory Order, FD 34111 (STB served August 21, 2002). The Authority argues that, while it elected to complete the CEQA process for the Line even after the Board had determined that it had jurisdiction over the HST System, it made clear during the environmental review process for the Line that it was not waiving any preemption arguments related to CEQA that might be available to the Authority, in the event of a court challenge to its CEQA compliance.[2]

The Authority further claims that Town of Atherton v. California High-Speed Rail Authority, 175 Cal. Rptr. 3d 145 (Ct. App. 2014), in which the California Court of Appeal held that the "market participant" doctrine[3] negated § 10501(b) preemption, should not affect the Board's decision in this proceeding. According to the Authority, the Atherton court affirmed a lower court decision finding that the Authority had complied with CEQA (specifically, that its programmatic environmental documentation concerning routing for the HST System was proper). As a result, the Authority states, Atherton did not decide the issue the Authority asks the Board to address here – whether a state court under CEQA can enjoin construction of a line the Board has authorized. The Authority also contends that the market participation doctrine was misapplied by the court in Atherton, as another California Court of Appeal recently found in

---

[2] Pet. 10 n.8.

[3] An explanation of the doctrine, and why the Board believes it does not apply here, is set forth below.

<u>Friends of the Eel River v. North Coast Railroad Authority</u>, 178 Cal. Rptr. 3d 752 (Ct. App. 2014), petition for review accepted by the California Supreme Court on December 10, 2014.

Rail Unions[4] and the State Building and Construction Trades Council of California support the Authority's petition. Other commenters (collectively, Opponents)[5] request that the Board deny the petition.[6] According to Opponents, the Board should not issue a decision in this proceeding because <u>Atherton</u> conclusively addresses the issues presented here, and the doctrines of res judicata, collateral estoppel, and waiver preclude a decision by the Board. Opponents claim, relying on <u>Atherton</u>, that the market participant doctrine exception to preemption applies here. Opponents also argue that § 10501(b) preemption would intrude upon the state of California's sovereignty by interfering with the internal controls and limitations the state has placed on the Authority, its own agency.

Furthermore, Opponents argue that expedited consideration of the petition is unnecessary and that the preemption issue the Authority asks the Board to address is not ripe. According to Opponents, the Authority has no immediate plans to begin construction of the Line. Therefore, Opponents assert, the injunctive relief that the Authority claims could delay the project is not imminent and likely would not occur before July 2015, the earliest that a hearing on the merits of the pending CEQA lawsuits is expected. Opponents also point out that <u>Eel River</u>, the California state court decision that disagreed with the <u>Atherton</u> court's analysis of the market participant doctrine in the context of § 10501(b) preemption, may be appealed to the California Supreme

---

[4] The Brotherhood of Maintenance of Way Employes Division/IBT; the Brotherhood of Railroad Signalmen; the International Association of Sheet Metal, Air and Transportation Workers Mechanical Division; the American Train Dispatchers Association; the Brotherhood of Locomotive Engineers and Trainmen/IBT; the National Conference of Firemen and Oilers District of Local 32BJ, SEIU; and the International Brotherhood of Electrical Workers (collectively, Rail Unions) filed a joint reply.

[5] Opponents include the litigants in the seven CEQA lawsuits (County of Kings, Citizens for High Speed Rail Accountability, Kings County Farm Bureau, City of Bakersfield, County of Kern, Dignity Health, First Free Will Baptist Church of Bakersfield, Coffee-Brimhall LLC, and the City of Shafter (collectively, CEQA Litigants)); Community Coalition on High-Speed Rail, Transportation Solutions Defense and Education Fund, and California Rail Foundation (collectively, Transportation Groups); United States Representatives David G. Valadao, Jeff Denham, Kevin McCarthy, and Devin G. Nunes; Senator Andy Vidak and Assemblywoman Diane L. Harkey of the California State Legislature; Friends of Rose Canyon; Madera County Farm Bureau (Farm Bureau); MEL's Farms; Roar Foundation; Jacqueline Ayer; Carol Bender; William C. Descary; Kathy Hamilton; and Alan Scott.

[6] Union Pacific Railroad Company (UP) also filed a reply. UP does not take a position regarding the preemption issues but requests that the Board not issue any decision that would compromise UP's ability to protect its freight rail network.

Court.[7]  According to Opponents, the disposition of any such appeal would clarify the preemption issues raised in this proceeding.  Therefore, Opponents argue that if the Board does not deny the Authority's petition, it should order additional briefing and/or wait to issue a decision.

On November 18, 2014, the Authority filed a motion for leave to reply and a reply.  The Authority acknowledges that Board rules prohibit such a reply, but it argues that its filing will ensure that the Board has a complete record in this proceeding and the filing will not delay the proceeding or prejudice any party.  On November 20, 2014, Transportation Groups filed an opposition to the motion for leave to reply, or, in the alternative, a motion for leave to file surreply.  Transportation Groups argue that the Board should deny the Authority leave to reply because the filing would prejudice opposing parties by denying them the opportunity to respond to new arguments and would impermissibly give the Authority opportunity to reargue and expand upon previous arguments.  In the alternative, Transportation Groups request that the Board grant parties 10 days to file replies to the Authority's November 18 filing.

## DISCUSSION AND CONCLUSIONS

The Board has discretionary authority under 5 U.S.C. § 554(e) and 49 U.S.C. § 721 to issue a declaratory order to eliminate controversy or remove uncertainty.  In this case, there is uncertainty as to whether, and the extent to which, the Board would find that CEQA is preempted with regard to the Line.  Accordingly, we instituted a proceeding to consider the issues raised in the Authority's petition and provided an opportunity for interested persons to file replies.  Following careful consideration of the Authority's petition and the opponents' arguments, we will issue this declaratory order to provide our views on the preemption issue.

Procedural issues.  We will not order additional briefing in this proceeding.  The procedural schedule that we adopted provided 28 days for any interested persons to file substantive replies, which we believe was enough time for parties to do so.  In fact, many parties filed substantive replies in the time period we provided, and we believe the existing record provides an adequate basis for us to consider and address the issues presented here.[8]

---

[7]  The Friends of Eel River and Californians for Alternatives to Toxics initiated appellate review of the Eel River decision in the California Supreme Court on November 7, 2014 (Friends of Eel River v. North Coast Railroad Authority, Case No. S222472).  According to the Supreme Court of California's docket, the petition for review was accepted on December 10, 2014.

[8]  We will grant the petitions for leave to intervene filed by Farm Bureau, Roar Foundation, and Transportation Groups.  We will accept late-filed replies of Senator Vidak; U.S. Representatives Valadao, Denham, McCarthy, and Nunes; and MEL's Farms in the interest of compiling a more complete record.  Roar Foundation's request for an extension of time will be denied because Roar Foundation has already filed a substantive comment and, as noted, we have a sufficient record to address the issues in this proceeding.  Roar Foundation argues that the proceeding should be delayed to allow argument from parties that may be affected by future segments of the HST System.  However, the Board's decision instituting a proceeding invited

(continued . . . )

We will deny the Authority's motion for leave to file a reply. Our rules do not permit a reply to a reply. 49 C.F.R. § 1104.13(c). Here, the parties have provided extensive arguments on the scope of federal preemption as it applies to the Line. A reply by the Authority is not necessary to provide the information we need to provide our views on preemption and address matters within the Board's expertise. Transportation Groups' opposition to motion for leave to reply or, in the alternative, motion for leave to file surreply is therefore denied as moot.

We also will not delay issuing a decision addressing the preemption issue. The issue is ripe for a decision because several CEQA lawsuits have been filed and, regardless of Opponents' suggestions to the contrary, permanent injunctive relief has already been requested and a preliminary injunction could be requested at any time in those pending lawsuits. Moreover, the Authority states that, contrary to the claims of some of the Opponents, it is in the process of implementing and/or procuring construction contracts for a majority of the Line and uncertainty regarding the preemption issue could impact its ability to proceed. Lastly, this decision will inform interested parties and the California Supreme Court of our views on federal preemption of CEQA and the market participant doctrine as they relate to this matter involving railroad transportation within the Board's jurisdiction under § 10501(b). See Atherton, 175 Cal. Rptr. 3d at 161 n.4 (noting that, as the agency authorized by Congress to administer the Interstate Commerce Act, the Board is "uniquely qualified" to address whether § 10501(b) preempts state law and that a request to the Board for a declaratory order would be the remedy for the Authority's preemption claims). Thus, we will issue this decision now to assist in the resolution of the conflict between Atherton and Eel River on federal preemption of CEQA in cases involving rail line construction.

Waiver. Transportation Groups suggest that the Authority has waived its right to assert any CEQA preemption arguments before the Board because they failed to raise the issue sooner.[9] We disagree.

Since the Board asserted jurisdiction over the HST project in April 2013, the Authority has consistently explained in its environmental documentation that it reserves the right to assert federal preemption in response to any potential legal challenge to its CEQA compliance.[10] Thus, it has expressly stated that it does not waive the right to claim preemption.

---

( . . . continued)

comments from all interested parties. To the extent there are additional arguments related to future segments that have not been presented here, parties may raise them in future proceedings.

[9] See Transportation Groups Reply 5-6.

[10] See Pet. 10 n.8 (quoting Fresno-Bakersfield HST Segment Final EIR/EIS 1-4: "[c]ompleting the state environmental review process does not waive any preemption argument that may be available to the Authority in the event of a legal challenge"; and citing Palmdale-Burbank HST Segment Notice of Preparation, n.1, repeating that the Authority reserved its right to assert preemption).

In addition, the fact that the Authority did not previously seek a ruling on preemption in the Board's previous proceedings concerning the HST System does not amount to a waiver, as those proceedings did not squarely involve the CEQA preemption issue now presented to the Board. In decisions issued in April and June 2013, the Board held that it had jurisdiction over the HST project, HST System Jurisdiction Decision, slip op. at 2, and authorized the construction of the Merced to Fresno HST section, Merced-to-Fresno, slip op. at 12-15. In Fresno-to-Bakersfield, in a decision issued on August 12, 2014, the Board authorized construction of the Line. While the Authority possibly could have raised the CEQA preemption issue during the course of those proceedings, the preemption issue was not directly relevant to those proceedings (such that the Board would have needed to decide the issue at that time), nor would it have affected the outcome of those proceedings.[11]

Transportation Groups suggest that the Authority could have asked the state court in Atherton to refer the CEQA preemption issue to the Board. However, while the Authority could have asked for such a referral from the court, it was not required,[12] and a decision not to request such a referral does not mean the Authority's arguments before the Board are waived.[13] Also,

---

[11] In deciding whether to authorize a proposed rail construction (whether under the 49 U.S.C. § 10901 formal application process or, as here, the exemption process in 49 U.S.C. § 10502), the Board considers and weighs the evidence before it on the transportation merits of the proposed construction and the adequacy of the environmental review under the National Environmental Policy Act. Those are the issues that the Board analyzed in both Fresno-to-Bakersfield and Merced-to-Fresno (where the Board also explained why the HST System was within its jurisdiction as part of the interstate rail system).

[12] See 14500 Ltd. LLC—Pet. for Declaratory Order, FD 35788, slip op. at 2 (STB served June 5, 2014) (issues involving the federal preemption provision contained in 49 U.S.C. § 10501(b) can be decided by the Board or the courts in the first instance); Jie Ao & Xin Zhou—Pet. for Declaratory Order, FD 35539, slip op. at 4, 7-8 (STB served June 6, 2012) (explaining that state court may resolve preemption issues, as long as it applies applicable Board and court precedent).

[13] The issue of whether a party has waived an argument usually (though not always) arises on appeal after a party fails to present the argument to the Board during the course of on-going Board proceedings. In such a case, a reviewing court will generally deem the argument waived and will not address it because the Board has not had the opportunity to address the issue in the first instance. See Erie-Niagara Rail Steering Comm. v. STB, 247 F.3d 437, 443-44 (2d Cir. 2001); W. Res., Inc. v. STB, 109 F.3d 782, 793-94 (D.C. Cir. 1997). See also Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 553-54 (1978) (explaining that parties need to forcefully raise issues during the course of agency's proceedings).

Here, there are no other current proceedings involving the Authority or the Line pending before the Board. The Authority has now raised the issue of potential CEQA preemption for this rail transportation project by requesting that the Board institute a declaratory order proceeding under 5 U.S.C. § 554(e) and 49 U.S.C. § 721 to address the uncertainty that now exists regarding

(continued . . . )

the Authority's decision not to appeal the Atherton decision to the California Supreme Court (or ultimately even the United States Supreme Court)[14] does not affect whether the Authority has waived its CEQA preemption arguments before the Board.  A decision not to appeal a state court judgment does not affect whether a party has timely raised arguments or issues before the Board.

    Collateral estoppel and res judicata.  Opponents argue that res judicata (claim preclusion) and collateral estoppel (issue preclusion) prohibit the Board from granting the Authority's petition because the Atherton court has already addressed the issue of whether CEQA is preempted with respect to the Line.[15]  We believe neither issue nor claim preclusion bars the Board from issuing a declaratory order providing its views in the circumstances presented here.  As discussed in more detail below, two California state appellate courts have now issued conflicting opinions addressing whether CEQA is preempted by § 10501(b).  In Atherton, a California Court of Appeal held that CEQA was not preempted by § 10501(b) with respect to the Authority's programmatic environmental documentation concerning routing of the HST System.  More recently, however, another California Court of Appeal found in Eel River that CEQA was preempted by § 10501(b) where, as with the Line, the case involves rail transportation within the Board's jurisdiction.  Because of these conflicting opinions regarding CEQA preemption and because the Board is "uniquely qualified" to determine the preemption question,[16] the Board provides this interpretation of its statute pursuant to 5 U.S.C. § 554(e) and 49 U.S.C. § 721 in order to remove the uncertainty that exists with regard to the Board's preemption analysis.

---

( . . . continued)

the issue.  Neither of those statutory provisions contains a time limit for when a declaratory order must be requested.

    [14]  See Transportation Groups Reply 6.

    [15]  Transportation Groups Reply 4-11; CEQA Litigants Reply 3-4.  Claim preclusion "embodies the principle 'that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so.'"  SBC Commc'ns v. FCC, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (discussing general elements of claim preclusion under federal law); see also Brother Records, Inc. v. Jardine, 432 F.3d 939, 943 (9th Cir. 2005) (discussing the elements of claim preclusion under California law).  Issue preclusion "bars relitigation of an issue by a party 'that has actually litigated [the] issue.'"  SBC Commc'ns, 407 F.3d at 1229.

    [16]  Atherton, 175 Cal. Rptr. 3d at 161 n.4.  See N.Y. & Atl. Ry. v. STB, 635 F.3d 66, 70 (2d Cir. 2011); Adrian & Blissfield R.R. v. Vill. of Blissfield, 550 F.3d 533, 539 (6th Cir. 2008); New Orleans & Gulf Coast Ry. v. Barrois, 533 F.3d 321, 331 (5th Cir. 2008); Emerson v. Kan. City S. Ry., 503 F.3d 1126, 1130 (10th Cir. 2007); Green Mountain v. Vermont, 404 F.3d 638, 642 (2d Cir. 2005) ("the Transportation Board is 'uniquely qualified to determine whether state law . . . should be preempted' by the Termination Act."); see also Jie Ao & Xin Zhou—Pet. for Declaratory Order, slip op. at 4, 7-8 (a state court may resolve preemption issues, as long as it applies Board and court precedent).  Moreover, in this case, one of the conflicting opinions could frustrate the Board's recent approval of the construction of the Line, as discussed below.

7

Section 10501(b) Preemption.  The Interstate Commerce Act is "among the most pervasive and comprehensive of federal regulatory schemes."  Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 318 (1981).  The preemption provision of the Act, as broadened by the ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, expressly provides that the jurisdiction of the Board over "transportation by rail carriers" is "exclusive."  49 U.S.C. § 10501(b).  The statute defines "transportation" expansively to encompass any property, facility, structure or equipment "related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use."  49 U.S.C. § 10102(9).  Moreover, "railroad" is defined broadly to include a switch, spur, track, terminal, terminal facility, freight depot, yard, and ground, used or necessary for transportation.  49 U.S.C. § 10102(6).  Section 10501(b) expressly provides that "the remedies provided under [49 U.S.C. §§ 10101-11908] with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."  Section 10501(b) thus is intended to prevent a patchwork of local regulation from unreasonably interfering with interstate commerce.  See Norfolk S. Ry.—Pet. for Declaratory Order, FD 35701, slip op. at 6 & n.14 (STB served Nov. 4, 2013); H.R. Rep. No. 104-311, at 95-96 (1995), reprinted in 1995 U.S.C.C.A.N. 793, 808.  As the courts have stated, it is "difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations" than § 10501(b).  CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996).

In interpreting the reach of § 10501(b) preemption, the Board and the courts have found that it prevents states or localities from intruding into matters that are directly regulated by the Board (e.g., rail carrier rates, services, construction, and abandonment).  It also prevents states and localities from imposing requirements that, by their nature, could be used to deny a rail carrier's ability to conduct rail operations.  Thus, state or local permitting or preclearance requirements, including environmental permitting or preclearance requirements, are categorically preempted as to any rail lines and facilities that are an integral part of rail transportation.  See Green Mountain R.R., 404 F.3d at 643; City of Auburn v. United States, 154 F.3d 1025, 1027-31 (9th Cir. 1998) (if local authorities have the ability to impose environmental permitting regulations on railroads, this power will in fact amount to economic regulation if the carrier is prevented from constructing, acquiring, operating, or abandoning a line).

Other state actions may be preempted as applied – that is, only if they would have the effect of unreasonably burdening or interfering with rail transportation, which is a fact-specific determination based on the circumstances of each case.  See N.Y. Susquehanna & W. Ry. v. Jackson, 500 F.3d 238, 252 (3d Cir. 2007) (federal law preempts "state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation"); Joint Pet. for Declaratory Order—Bos. & Me. Corp. & Town of Ayer (Ayer), 5 S.T.B. 500 (2001), recons. denied (STB served Oct. 5, 2001); Borough of Riverdale—Pet. for Declaratory Order—N.Y. Susquehanna & W. Ry., FD 33466, slip op. at 2 (STB served Feb. 27, 2001); Borough of Riverdale—Pet. for Declaratory Order—N.Y. Susquehanna & W. Ry., 4 S.T.B. 380, 387 (1999).

Not all state and local regulations that affect rail carriers are preempted by § 10501(b). State and local regulation is appropriate where it does not interfere with rail operations. Localities retain their reserved police powers to protect the public health and safety so long as their actions do not unreasonably burden interstate commerce. Green Mountain, 404 F.3d at 643. Thus, the Board has stated that it is reasonable for states and localities to request rail carriers to: (1) share their plans with the community when they are undertaking an activity for which another entity would require a permit; (2) use state or local best management practices when they construct railroad facilities; (3) implement appropriate precautionary measures at the railroad facility, so long as the measures are fairly applied; (4) provide representatives to meet periodically with citizen groups or local government entities to seek mutually acceptable ways to address local concerns; and (5) submit environmental monitoring or testing information to local government entities for an appropriate period of time after operations begin. Ayer, 5 S.T.B. at 511. Electrical, plumbing, and fire codes also are generally applicable. Green Mountain, 404 F.3d at 643. State and local action, however, must not have the effect of foreclosing or unduly restricting the rail carrier's ability to conduct its operations or otherwise unreasonably burden interstate commerce. CSX Transp., Inc.—Pet. for Declaratory Order, FD 34662, slip op. at 5 (STB served May 3, 2005). In short, states and towns may exercise their traditional police powers over the development of rail property to the extent that the regulations "protect public health and safety, are settled and defined, can be obeyed with reasonable certainty, entail no extended or open-ended delays, and can be approved (or rejected) without the exercise of discretion on subjective questions." Green Mountain, 404 F.3d at 643.

Finally, the National Environmental Policy Act (NEPA), 42 U.S.C. 4321 et seq., applies to rail constructions like the HST System that require a license under 49 U.S.C. § 10901, and the Board can adopt appropriate environmental mitigation conditions in response to concerns raised by the parties, including local entities, during the NEPA review.[17] Indeed, to reduce or mitigate potential environmental impacts of proposed constructions discovered during the NEPA review, the Board usually imposes extensive environmental mitigation conditions on rail construction approvals.[18]

Application here. As previously noted, the Authority asks us to issue a declaratory order finding only that a prohibitive injunction under CEQA is preempted, not its compliance with CEQA itself. Specifically, the Authority claims that it does not seek preemption of other injunctive

---

[17] The Board's decision permitting construction of the Line came after extensive environmental review had been completed, including preparation of an Environmental Impact Statement (EIS) under NEPA. The Federal Railroad Administration (FRA) was the lead agency in the EIS prepared for the Line, because it is providing some of the funding, but the Board participated in the EIS process as a cooperating agency. After carefully reviewing the EIS, the Board adopted it in its decision in Fresno-to-Bakersfield and required compliance with all of the environmental mitigation imposed by FRA. See Fresno-to-Bakersfield, slip op. at 5-7, 16-19.

[18] See, e.g., Ala. R.R.—Constr. & Operation Exemption—Rail Line Extension to Port MacKenzie, Ala., FD 35095, slip op. at 21, App. 1 (STB served Nov. 21, 2011) (imposing 100 mitigation measures on an approximately 35-mile rail line).

remedies such as a court order requiring revised environmental analyses or additional environmental mitigation under CEQA, so long as there is no work stoppage.[19]  However, as a practical matter, we find it difficult to separate the prohibitive injunctive remedy available under CEQA from a California state court's ability to enforce compliance with CEQA itself.  In other words, if a state court cannot compel compliance with CEQA by ordering a halt to the agency's proposed action, it is unclear how CEQA could be enforced.  The primary way a state court could meaningfully enforce CEQA would be to temporarily halt the Authority's ability to proceed with construction (i.e., a prohibitive injunction) pending the completion of any further environmental analysis and development of additional environmental mitigation that the court might find to be required.  Indeed, if a California court were to find that the Authority had not fully studied the impact of the Line under CEQA, and in turn that additional mitigation might be required, but the Authority had already begun construction activities or had even completed construction, the court's after-the-fact order could have already been rendered meaningless.  Therefore, because we do not have a persuasive argument for separating CEQA's prohibitive remedy from its other injunctive remedies, we discuss the core issue as whether CEQA as a whole – which is usually enforced through a third-party enforcement action –  is preempted with regard to the Line.

Applying the well-established preemption principles here, the Board concludes that CEQA is categorically preempted by § 10501(b) in connection with the Line.  As the Board has previously found, CEQA is a state preclearance requirement that, by its very nature, could be used to deny or significantly delay an entity's right to construct a line that the Board has specifically authorized, thus impinging upon the Board's exclusive jurisdiction over rail transportation.  DesertXpress Enters., LLC—Pet. for Declaratory Order, slip op. at 5 (CEQA *per se* preempted for proposed 200-mile high-speed passenger system).  See also N. San Diego Cnty. Transit Dev. Bd.—Pet. for Declaratory Order, slip op. at 9 (finding state and local requirement to apply for permit and prepare environmental report before constructing track to be preempted); Eel River, 178 Cal. Rptr. 3d at 767-71 (CEQA preempted for railroad projects because, in the context of railroad operations, CEQA "is not simply a health and safety regulation imposing an incidental burden on interstate commerce").  Accord City of Auburn, 154 F.3d at 1027-31; Green Mountain, 404 F.3d at 642-45.  In addition, a CEQA enforcement suit in this context attempts to regulate a project that is directly regulated by the Board.  Section 10501(b) expressly preempts any state law attempts to regulate rail construction projects, as they are under the Board's exclusive jurisdiction.  See CSX Transp., Inc.—Pet. for Declaratory Order, slip op. at 3.

Moreover, while the Board has recognized that voluntary agreements between rail carriers and state or local entities might not be preempted under § 10501(b),[20] we conclude that any implied agreement allegedly created by the Authority's voluntary compliance with CEQA's

---

[19]  Pet. 10.

[20]  See Ayer, 5 S.T.B. at 512 (explaining that a railroad's voluntary agreements may be an exception to § 10501(b) preemption); Twp. of Woodbridge, N.J. v. Consol. Rail Corp. (Woodbridge 2000), NOR 42053, slip op. at 4-5 (STB served Dec. 1, 2000), clarified in decision served March 23, 2001(Woodbridge 2001) (same).

procedures during the environmental review for the Line is not controlling. As the Authority explains, CEQA compliance for the HST System began prior to the Board's assertion of jurisdiction over the project. Following issuance of the HST System Jurisdiction Decision in April 2013, the Authority has consistently stated in its environmental documentation that it reserves the right to assert federal preemption in response to any potential legal challenge to its CEQA compliance.[21] Thus, to the extent any implied agreement existed, the Authority expressly modified that agreement once the Board asserted jurisdiction.

Even assuming arguendo that the Authority's previous CEQA compliance created an implied agreement, the Board concludes that any such agreement unreasonably interferes with interstate commerce and is not enforceable under § 10501(b). As the Board has explained, a railroad's agreements with state or local entities may be preempted by § 10501(b) if the agreement unreasonably interferes with interstate commerce or railroad operations. Woodbridge 2000, slip op. at 4-5; Woodbridge 2001, slip op. at 3.[22] See Blanchard Sec. Co. v. Rahway Valley R.R., 191 F. App'x 98, 100 (3d Cir. 2006) (unpublished) (following Woodbridge 2000). Here, the Board's jurisdiction extends to the Line because, as we have found, the Line would be constructed and operated as part of the interstate rail network. Merced-to-Fresno, slip op. at 11-15. Moreover, the Board specifically authorized the construction of the Line after a review of the environmental impacts under NEPA and the transportation merits of the project. Fresno-to-Bakersfield, slip op. at 12-21. The Line nevertheless is now the subject of seven CEQA enforcement suits in California state court that could block or significantly delay the Authority's right to proceed with the project. We believe that this conflict with our jurisdiction runs contrary to Congress's intent. In particular, we conclude that any implied agreement to comply with CEQA that potentially could have the effect, through the mechanism of a third-party enforcement suit, of prohibiting the construction of a rail line authorized by the Board unreasonably interferes with interstate commerce by conflicting with our exclusive jurisdiction and by preventing the Authority from exercising the authority we have granted it. See Blanchard, 191 F. App'x at 100 (finding state law claims seeking enforcement of contract with railroad preempted because they would interfere with the reactivation of a rail line). Therefore, to the extent the Authority's previous voluntary CEQA compliance created an implied contract,

---

[21] See Pet. 10 n.8 (quoting Fresno-Bakersfield HST Segment Final EIR/EIS 1-4: "[c]ompleting the state environmental review process does not waive any preemption argument that may be available to the Authority in the event of a legal challenge"; and citing Palmdale-Burbank HST Segment Notice of Preparation, n.1, repeating that Authority reserved its right to assert preemption).

[22] The facts here are distinguishable from Woodbridge. In Woodbridge 2000, the Board found that a voluntary agreement between a railroad and a municipality in which the railroad agreed to limit certain nighttime operations was not preempted, because the railroad "ha[d] not shown that enforcement of its commitments would unreasonably interfere with the railroad's operations." Woodbridge 2000, slip op. at 5. The Board later clarified that decision by explaining that it did not preclude the railroad from arguing in subsequent proceedings that the agreement did interfere with interstate commerce. Woodbridge 2001, slip op. at 3.

the Board concludes that any such agreement is preempted under § 10501(b) because of its impact on interstate commerce.

Opponents rely on the California Court of Appeal's decision in <u>Atherton</u>, which previously found that CEQA is not preempted by § 10501(b) with regard to construction of the HST System. However, to the extent our analysis above conflicts with that decision, we respectfully disagree with the court's analysis.

First, the <u>Atherton</u> court did not directly decide, <u>see</u> 175 Cal. Rptr. 3d at 161-62, whether CEQA qualified as a state permitting or preclearance requirement "that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that [the Board] has authorized." <u>Id.</u> at 159-60. However, to the extent <u>Atherton</u> can be read to suggest that CEQA is not a preclearance requirement, the court's analysis, in our view, is incorrect. Consistent with our prior decisions such as <u>DesertXpress</u>, we conclude here that CEQA is a state preclearance requirement because the environmental review process under CEQA can be used under state law, through an enforcement proceeding, to block a Board-authorized rail construction project. Indeed, another California Court of Appeal in <u>Eel River</u>, 178 Cal. Rptr. 3d at 769-70, recently explained that the environmental review process under CEQA, though it serves a laudable and important purpose, qualifies as a state preclearance requirement that "could significantly delay or even halt a project in some circumstances," and therefore is categorically preempted.

Moreover, the court in <u>Atherton</u> failed to acknowledge another reason why CEQA is categorically preempted by § 10501(b): that because environmental review under CEQA attempts to regulate where, how, and under what conditions the Authority may construct the Line, the application of CEQA here would constitute an attempt by a state to regulate a matter directly regulated by the Board – the construction of a new rail line as part of the interstate rail network. <u>See</u> <u>CSX Transp., Inc.—Pet. for Declaratory Order</u>, slip op. at 3 (§ 10501(b) categorically preempts any "state or local regulation of matters directly regulated by the Board – such as the construction, operation, and abandonment of rail lines"); <u>Franks Inv. Co. v. Union Pac. R.R.</u>, 593 F.3d 404, 410-11 (5th Cir. 2010); <u>Adrian & Blissfield R.R.</u>, 550 F.3d at 539-40.

Ultimately, the <u>Atherton</u> court appears to have assumed that CEQA was indeed preempted, but then held that an exception to federal preemption – the market participation doctrine – applied to block any preemption of CEQA in this particular case. <u>See</u> 175 Cal. Rptr. 3d at 162-68. However, we agree with the <u>Eel River</u> court that the market participation doctrine does not apply in the context of a CEQA enforcement suit for a railroad project under our jurisdiction and that, consequently, the <u>Atherton</u> court incorrectly applied it to bar federal preemption of CEQA. <u>Eel River</u>, 178 Cal. Rptr. 3d at 774-78.

As both the <u>Atherton</u> and <u>Eel River</u> courts explain, the market participation doctrine shields state action from federal preemption where the state's action is proprietary in nature and not regulatory – <u>i.e.</u>, the state is acting as a participant in the marketplace and not as a regulator. <u>See</u> <u>Eel River</u>, 178 Cal Rptr. 3d at 774-76 ("[T]he market participation doctrine gives governmental entities the freedom to engage in conduct that would be allowed to private market participants. It accomplishes this end by allowing the governmental entity to avoid a charge by

12

aggrieved third parties that its actions are preempted by federal law.") (citations omitted); Atherton, 175 Cal. Rptr. 3d at 163-64. The Atherton court held that the market participation doctrine barred preemption under § 10501(b) because it found that the Authority's HST project, and its related CEQA compliance, was proprietary in nature and that the Authority was not acting as a regulator. See 175 Cal. Rptr. 3d at 164-68. However, as the Eel River court explained, even if a state agency's action can be viewed as "'proprietary' and the initial decision to prepare the EIR a component of this proprietary action, a writ proceeding by a private citizen's group challenging the adequacy of the review under CEQA is not part of this proprietary action." 178 Cal Rptr. 3d at 776. Indeed, when a state invokes the market participation doctrine, it usually does so *"defensively"* to protect its actions from federal preemption. Id. (emphasis in original). However, when bringing a CEQA enforcement suit, "[p]etitioners seek to stand the market participation doctrine on its head and use it to avoid the preemptive effect of a federal statute the state entity is seeking to invoke." Id. As the Eel River court noted, "[n]one of the cases involving market participation use the doctrine in this context, and such a use would be antithetical to the purpose underlying the doctrine." Id. Thus, we agree with the Eel River court's conclusion that "[t]he aspect of CEQA that allows a citizen's group to challenge the adequacy of an EIR when CEQA compliance is required is clearly regulatory in nature, as a lawsuit against a governmental entity cannot be viewed as part of its proprietary action, even if the lawsuit challenges that proprietary action." Id.[23]

In addition, in the context of applying the market participation doctrine, the Atherton court relied upon the alleged requirements of California's Proposition 1A (the bond measure that provides funding for the HST System) and the Authority's subsequent voluntary attempted compliance with CEQA to demonstrate that the Authority was acting as a market participant. See 175 Cal. Rptr. 3d at 165-67. While the Board will not attempt to interpret the requirements of Proposition 1A, as that is for a state court to decide, we do not believe the actions that the

---

[23] Opponents cite to numerous market participation doctrine cases, almost all of which are discussed in both the Atherton and Eel River decisions. None of these cases support Opponents' arguments because, as the Eel River court explained, they all involved situations where the state or municipality used the market participation doctrine defensively to shield its actions in procuring goods and services from federal preemption. See, e.g., Transportation Groups Reply 11-22, citing Bldg. & Constr. Trades Council v. Associated Builders & Contractors, 507 U.S. 218 (1993); Johnson v. Rancho Santiago Cmty. Coll., 623 F.3d 1011 (9th Cir. 2010); Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist., 498 F.3d 1031 (9th Cir. 2007); Tocher v. City of Santa Ana, 219 F.3d 1040 (9th Cir. 2000), abrogated in part by City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424 (2002); Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686 (5th Cir. 1999). In this case, the relevant regulatory actions are not the procurement of goods or services for the Line, but rather the third-party enforcement suits filed against the Authority. Indeed, this case is analogous to the so-called Grupp cases discussed in Eel River, in which the courts held that when a third party "relies on a state law of general application to challenge a state proprietary action, that challenge operates as a regulation, rather than a part of the proprietary action being challenged." 178 Cal. Rptr. 3d at 776-77.

Authority has taken under Proposition 1A and CEQA are the relevant actions for purposes of determining whether the market participation exception to preemption should apply. As noted above, the relevant question under the market participation doctrine is whether a third-party enforcement action under CEQA constitutes state proprietary or regulatory action. As the Eel River court explained, such an action is a regulatory, not a proprietary action.[24]

    State sovereignty. Finally, Opponents argue that any preemption of CEQA here would infringe upon California's state sovereignty by interfering with the state's right to dictate how its own agency (the Authority) must proceed when building a state project.[25] Opponents assert that Proposition 1A requires the Authority to comply with CEQA as a condition of obtaining and using Proposition 1A funding to construct the HST.[26] However, as we have noted, the relevant regulatory actions for purposes of our preemption analysis here are the third-party CEQA enforcement suits, not the state law that authorized funding for the HST System. Our analysis indicating that § 10501(b) preempts third-party attempts to enforce CEQA against a state agency does not infringe upon California's state sovereignty because the CEQA enforcement actions are not being brought by the state. Rather, the enforcement actions in state court are being brought by third parties against a state agency under the guise of state law.

---

[24] Opponents, like the Atherton court, suggest that the relevant action for purposes of determining preemption here consists of the Authority's internal approvals related to the HST project and voluntary attempted compliance with CEQA. Transportation Groups Reply 11-22. Opponents suggest that preemption only applies where there is an "external" attempt to regulate a rail carrier. See, e.g., id. at 21-22 (characterizing the N. San Diego and Eel River cases as involving "external" attempts to regulate). We do not need to decide whether Opponents' internal/external distinction is controlling, however, because the relevant actions here are indeed "external" attempts to regulate a project, under the Opponents' own definition of "external." The relevant regulatory actions here are the "external" third-party CEQA enforcement suits being brought against the Authority – not any internal decisions the Authority has made. Such lawsuits can regulate rail transportation just as effectively as a state statute or regulation. See Maynard v. CSX Transp., Inc., 360 F. Supp. 2d 836, 840 (E.D. Ky. 2004) (explaining that common law suits constitute regulation); Guckenberg v. Wis. Cent. Ltd., 178 F. Supp. 954, 958 (E.D. Wis. 2001) (same) (citing and quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 521 (1992)). In addition, Opponents suggest that attempted regulation of state rail agencies like the Authority should be treated differently than local rail agencies under § 10501(b), or that only regulatory actions against private railroads are subject to preemption. See Transportation Groups Reply 21-22, 28. However, no such distinctions exist in the case law applying § 10501(b). See, e.g., Eel River, 178 Cal. Rptr. 3d at 760 (attempt to regulate activities of local rail carrier preempted); N. San Diego, slip op. at 1-2, 7 (same); Ala. R.R., slip op. at 5 (state railroad's construction of new rail line under Board's exclusive jurisdiction). See also California v. Taylor, 353 U.S. 553, 561-68 (1957) (state owned railroads generally subject to federal rail regulation in the same manner as private railroads).

[25] See Transportation Groups Reply 23-29; CEQA Litigants Reply 4.

[26] See Transportation Groups Reply 23-29.

In addition, as we have noted, we do not opine here on whether Proposition 1A requires the Authority to comply with CEQA as a condition of its funding. Whether CEQA compliance is required before the Authority is allowed to obtain or use Proposition 1A funding is a question of state law for a state court to decide. Fresno-to-Bakersfield, slip op. at 11 ("[I]t is not our role to determine whether the Authority has complied with state or Federal funding requirements. That is an issue to be decided by the appropriate courts."); Cf. Nixon v. Mo. Mun. League, 541 U.S. 125, 134-37 (2004) (explaining that even if a federal statute were to preempt a state requirement directed at a state agency, the state legislature still has the authority to control the funding of the state agency and implicitly the state agency's actions).

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. The Authority's petition for declaratory order is granted to the extent discussed above.

2. The motions to intervene are granted, and the late-filed comments of Senator Vidak; U.S. Representatives Valadao, Denham, McCarthy, and Nunes; and MEL's Farms are accepted into the record.

3. The Authority's motion for leave to file a reply is denied. Transportation Groups' opposition to motion for leave to reply or, in the alternative, motion for leave to file surreply is denied as moot.

4. This decision is effective on its service date.

By the Board, Chairman Elliott, Vice Chairman Miller, and Commissioner Begeman. Commissioner Begeman dissented with a separate expression.

_____

COMMISSIONER BEGEMAN, dissenting:

Since the Authority first came to the Board in March 2013, the majority's main focus has been on getting out of the Authority's way instead of providing much needed review and oversight (which could have occurred during the Board's construction application process) and ensuring that conflicts with stakeholders (e.g., freight carriers, Mercy Hospital) would be resolved. Although the majority's unobtrusive posture continues, today's overreaching order also clears the citizens of the State of California from the Authority's path. Just as I could not support the majority's prior oversight avoidance, I cannot support moving a significant piece of the Authority's decision-making beyond the reach of the people whose interests the Authority purportedly serves.

It is well established that the Authority and the Federal Railroad Administration (FRA) have worked together on a number of joint environmental reviews of the HST System. During these reviews, "the Authority served as the lead state agency for compliance with the California

Environmental Quality Act (CEQA), and FRA and the Authority served as co-leads for compliance with NEPA.  These joint reviews have produced single environmental documents titled "environmental impact reports/environmental impact statements" (EIR/EIS) to meet the obligations of both CEQA and NEPA, respectively."[1]  In approving the two segments over my objections, the Board twice adopted such joint documents, including numerous CEQA mitigation provisions.

If the Authority was interested in foregoing its CEQA commitments under the guise of federal preemption, it could have revised either of the two EIR/EISs prior to the Board's adoption of them.  After all, the Board claimed jurisdiction over the project in advance of issuing a final decision (including the adoption of the joint environmental documents) to approve construction of the first section in June 2013.  But the Authority took no such action on either segment.  The Board adopted both of the joint environmental documents, arguably making the Authority fully accountable for both CEQA and NEPA mitigation.

The Authority has not asked the Board to shield it entirely against California's environmental laws (which may have to do with the conditioning of the November 2008 bond measure supporting the Project on CEQA compliance).  The petition for declaratory order instead states that the Authority "completed the CEQA process when it completed and certified the EIR . . . for the Fresno-Bakersfield HST Segment in May of 2014" and thus "does not seek declaratory relief regarding non-injunctive remedies, such as an order requiring revised environmental analyses or additional environmental mitigation . . . ."

Yet the majority has decided to go even further than the Authority requested by finding that CEQA is "categorically preempted."  In other words, there is now no means of enforcing CEQA with respect to the Project.  Authority claims of CEQA compliance will be merely claims, and deviations from any of the CEQA provisions included in the Board's own-approved EIR/EISs will not be challengeable.

Ironically, today's ruling could have unintended consequences for the long-term prospects of the Project.  Although the majority claims that its decision does not implicate the bonding monies, those claims certainly bind no one in the State of California.  The majority's decision to remove this element of compliance oversight for the Authority may instead serve only to spur further litigation.

It is within the Board's discretion to issue a declaratory order and it should decline to do so here.[2]  The Authority has come before the Board many times asserting its commitment to both CEQA and NEPA.  This agency has adopted that commitment into its orders and many

---

[1]  See, e.g., Cal. High-Speed Rail Auth.—Constr. Exemption—in Fresno, Kings, Tulare, & Kern Cntys., Cal., FD 35724 (Sub-No. 1), slip op. at 2 n.3 (STB served Aug. 12, 2014).

[2]  See 5 U.S.C. § 554(e); 49 U.S.C. § 721 (the Board has the discretion to grant or decline petitions for declaratory order).

stakeholders have relied on the Authority's representations over the years.  The Authority should live up to its commitments and the Board should refrain from undermining them.

I dissent.

**Exhibit B**

44436
EB

SERVICE DATE – MAY 5, 2015

SURFACE TRANSPORTATION BOARD

DECISION

Docket No. FD 35861

CALIFORNIA HIGH-SPEED RAIL AUTHORITY—PETITION FOR DECLARATORY
ORDER

Digest:[1]  Petitions for reconsideration of a December 12, 2014 declaratory order in this proceeding and a motion for stay of that order were filed.  The Board is unable to reach a majority decision regarding these filings.  Accordingly, the petitions for reconsideration and motion for stay cannot be granted.

Decided:  May 4, 2015

Petitions requesting reconsideration of California High-Speed Rail Authority—Petition for Declaratory Order (December Decision), FD 35861 (STB served Dec. 12, 2014) and a motion for stay of that decision were filed.  In the December Decision, the Board (with Vice Chairman Begeman dissenting) issued a declaratory order under 5 U.S.C. § 554(e) and 49 U.S.C. § 721 regarding the application of federal preemption of the California Environmental Quality Act (CEQA) to the construction of a high-speed passenger line between Fresno and Bakersfield, Cal. (the Line).  The Board is unable to reach a majority decision regarding the petitions for reconsideration and the motion for stay.  Accordingly, the requests for reconsideration and a stay cannot be granted.  A procedural history follows.

On October 9, 2014, the California High-Speed Rail Authority (Authority) filed a petition requesting that the Board issue a declaratory order regarding the availability of injunctive remedies under CEQA to prevent or delay construction of the Line.  Following institution of a proceeding to consider the issues raised in the Authority's petition and an opportunity for interested parties to file replies, the Board issued the December Decision, providing its opinion that 49 U.S.C § 10501(b) preempts application of CEQA to the construction of the Line.

On December 29, 2014, the Community Coalition on High-Speed Rail (CC-HSR), Transportation Solutions Defense and Education Fund (TRANSDEF), California Rail Foundation (CRF), the Counties of Kings and Kern, the City of Shafter, Citizens for High Speed Rail Accountability (CHSRA), Kings County Farm Bureau, Dignity Health, and First Free Will

---

[1]  The digest constitutes no part of the decision of the Board but has been prepared for the convenience of the reader.  It may not be cited to or relied upon as precedent.  Policy Statement on Plain Language Digests in Decisions, EP 696 (STB served Sept. 2, 2010).

Baptist Church of Bakersfield (collectively, Group Petitioners) filed a petition (the Group Petition)[2] asking that the Board reconsider the December Decision. On December 30, 2014, Jacqueline Ayer (Ayer) also filed a petition for reconsideration (the Ayer Petition). The Authority responded in opposition to the petitions for reconsideration on January 20, 2015. On February 19, 2015, CHSRA, CC-HSR, TRANSDEF, CRF, the Counties of Kern and Kings, the Kings County Farm Bureau, and Dignity Health (collectively, Stay Petitioners)[3] filed a motion to stay the December Decision pending the Board's decision on reconsideration and judicial review by the federal court of appeals. The Authority replied in opposition to that motion on February 24, 2015.

Group Petitioners ask that the Board reconsider the December Decision and decline to issue a declaratory order. They argue that (1) Town of Atherton v. California High-Speed Rail Authority (Atherton), 175 Cal. Rptr. 3d 145 (Ct. App. 2014), controls the question of preemption of CEQA for the Line, (2) application of CEQA here does not interfere with the Board's jurisdiction and preemption defeats important state interests, (3) third-party enforcement is a key component of CEQA and should not be preempted, (4) application of the National Environmental Policy Act (NEPA) should not displace CEQA, (5) preemption here impinges on state sovereignty in violation of the Supremacy Clause, (6) § 10501(b) is not intended to preempt state police powers to protect the health and safety of its citizens, and (7) the Board's decision could cause a decline in state-sponsored railways.

The Ayer Petition asserts that the Board should reconsider the December Decision and deny the Authority's request for a declaratory order because the December Decision is internally inconsistent. The Ayer Petition also claims that (1) § 10501(b) does not preempt CEQA compliance imposed by Proposition 1A because the Board does not have jurisdiction over state funding statutes, (2) the Board's statements supporting its conclusion that the December Decision does not impinge on state sovereignty are contradictory, and (3) the Board should have relied on the preemption analysis in Atherton, but not on Friends of the Eel River v. North Coast Railroad Authority (Eel River), 178 Cal. Rptr. 3d 752 (Ct. App. 2014).[4]

In its reply to the petitions, the Authority argues that Ayer and Group Petitioners have not met the Board's standard for reconsideration. The Authority further asserts that (1) the December Decision is not internally inconsistent, (2) the Board properly relied on existing court and Board precedent in concluding that state and local environmental preclearance requirements are preempted, (3) the Board was not required to defer to the interpretation of the federal preemption provision in the Interstate Commerce Act by a state court in Atherton, and (4) the

---

[2] Coffee-Brimhall LLC was one of the filers of the Group Petition, but on April 9, 2015, it withdrew as a party from the proceeding.

[3] Stay Petitioners include most of the Group Petitioners. Coffee-Brimhall LLC was one of the Stay Petitioners until it withdrew from the proceeding on April 9, 2015.

[4] Eel River and Atherton are California state appellate court cases that came to opposite conclusions regarding the scope of federal preemption of CEQA.

Board was well within its discretion in deciding to issue a declaratory order to provide guidance to interested parties and the California Supreme Court that will hear an appeal of <u>Eel River</u> and presumably resolve the conflict between that decision and <u>Atherton</u>.

In the motion for a stay, Stay Petitioners claim that the Authority intends to cite the <u>December Decision</u> as grounds for dismissal of the state court litigation concerning the Authority's compliance with CEQA. Stay Petitioners argue that a stay of the <u>December Decision</u> meets the Board's standards for granting a stay. The Authority replies that the motion was untimely and does not meet the standards for a stay.

We have considered the record before us but are unable to reach a majority decision. Accordingly, the Group Petition, the Ayer Petition, and the motion for stay cannot be granted.

<u>It is ordered</u>:

1. The Group Petition, the Ayer Petition, and the motion for stay of the <u>December Decision</u> cannot be granted, as the Board was unable to reach a majority decision.

2. This proceeding is terminated.

3. This decision is effective on its service date.

By the Board, Acting Chairman Miller and Vice Chairman Begeman. Acting Chairman Miller and Vice Chairman Begeman commented with separate expressions.

_____

ACTING CHAIRMAN MILLER, commenting:

After reviewing the record, I conclude that the petitioners have raised no basis for reconsidering the <u>December Decision</u>. I also believe it would be appropriate to deny the motion for stay of that declaratory order.

<u>Petitions for Reconsideration.</u> A party may seek reconsideration of a Board decision by submitting a timely petition that (1) presents new evidence or substantially changed circumstances that would materially affect the Board's decision, or (2) demonstrates material error in the prior decision. 49 U.S.C. § 722(c); 49 C.F.R. § 1115.3; <u>see also</u> <u>W. Fuels Ass'n v. BNSF Ry.</u>, NOR 42088, slip op. at 2 (STB served Feb. 29, 2008). Where, as here, a petition alleges material error, a party must do more than simply make a general allegation; it must substantiate its claim of material error. <u>See</u> <u>Canadian Pac. Ry.—Control—Dakota, Minn. & E. R.R.</u>, FD 35081, slip op. at 4 (STB served May 7, 2009) (denying petition for reconsideration where petitioner did not substantiate its claim of material error, but merely restated arguments previously made and cited evidence previously submitted). Because I find no material error in the Board's prior analysis and no new evidence or changed circumstances are alleged, I believe the petitions for reconsideration should be denied.

Review of the <u>December Decision</u> shows that the decision itself addresses the arguments for reconsideration and refutes the claims of error. In the <u>December Decision</u>, slip op. at 8, the Board explained the longstanding precedent that state and local permitting or preclearance requirements are categorically preempted as to the construction and operation of rail lines and facilities within the Board's jurisdiction. The <u>December Decision</u> further explained the difference between preclearance or permitting requirements and localities' reserved police powers to protect the health and safety of their citizens, which are not preempted unless state and local regulation unreasonably burdens interstate commerce. <u>Id.</u> at 9. Based on this precedent, the Board concluded that the application of CEQA to the Line falls squarely within these categorically preempted state preclearance or permitting requirements. <u>Id.</u> at 10.

Contrary to the claims made by petitioners, preemption of CEQA as applied to the Line is also entirely consistent with Board precedent. As the Board explained, the correct analysis of 49 U.S.C. § 10501(b) and congressional intent of that provision is that application of CEQA through third-party enforcement suits would conflict with the Board's jurisdiction and could potentially block or significantly delay the construction of a rail line authorized by the Board. <u>December Decision</u>, slip op. at 10-11. As a result, § 10501(b) preempts application of CEQA for the Line, <u>id.</u>, and it is only the environmental review conducted at the federal level pursuant to NEPA that need be applied to the Line. This is entirely consistent with Board precedent. <u>Id.</u> at 10, 12. Therefore, the claims that the <u>December Decision</u> is contrary to Board precedent are without basis.

Both petitions allege that the Board incorrectly relied on the <u>Eel River</u> decision and that it should have relied on <u>Atherton</u>. The Board, however, relied on neither decision as binding or precedential authority. Instead, the Board analyzed the applicable federal law and explained why the Board agreed with the interpretation of federal law stated in <u>Eel River</u> and how, in its view, the analysis in <u>Atherton</u> was incorrect. <u>December Decision</u>, slip op. at 12-14.

The arguments regarding interference with state funding law and state sovereignty are similarly incorrect and mischaracterize the Board's decision. The interpretation of Proposition 1A is a matter of state law that the Board explicitly left to the California state courts. <u>Id.</u> at 13, 15. Contrary to the claims, therefore, the Board's decision does not preempt the application of CEQA as a possible condition of receiving Proposition 1A funding. Rather, the <u>December Decision</u>, slip op. at 14-15, explains that § 10501(b) preempts third-party lawsuits to enforce CEQA against a state entity that could interfere with the construction authority the Board has granted for the Line. The question of whether CEQA compliance could still be required if Proposition 1A funds are used is not addressed in the <u>December Decision</u>. <u>Id.</u> at 15. Moreover, because the preemption issue raised in this declaratory order proceeding relates to third-party enforcement suits against a state entity and not enforcement actions being brought by the state itself, the Board's conclusion that § 10501(b) preempts CEQA for the Line does not impinge on state sovereignty, as the <u>December Decision</u> properly found. <u>See id.</u> at 14.

In addition to the arguments explicitly discussed here, I considered all of the remaining arguments raised in the two petitions and conclude that neither petition establishes a material error, nor do the petitioners allege new evidence or substantially changed circumstances that

would materially affect the Board's <u>December Decision</u>. Accordingly, I find no basis for granting either of the petitions for reconsideration.

> <u>Motion for stay</u>. As a threshold matter, the motion for a stay is untimely. Board rules require that such a filing be made within 10 days of service of the relevant action. 49 C.F.R. § 1115.3(f). The relevant action was issued on December 12, 2014, and, therefore, any request for a stay of that decision should have been filed by December 22, 2014. Stay Petitioners filed their motion on February 19, 2015, nearly two full months after the deadline and without explanation of why they could not have filed in a timely manner.

> In addition, Stay Petitioners have failed to demonstrate that a stay is warranted. The Board requires a party seeking a stay to establish that: (1) there is a likelihood that it will prevail on the merits of any challenge to the action sought to be stayed; (2) it will suffer irreparable harm in the absence of a stay; (3) other interested parties will not be substantially harmed by a stay; and (4) the public interest supports the granting of the stay. <u>Eighteen Thirty Group, LLC— Acquis. Exemption—In Allegany County, Md.</u>, FD 35438 et al., slip op. at 2 (STB served Nov. 17, 2010). Stay Petitioners claim that denial of their motion would irreparably harm them because a stay is necessary to prevent dismissal of Stay Petitioners' California state court litigation concerning the Authority's compliance with CEQA.[1] The <u>December Decision</u>, however, was issued to "assist in the resolution of the conflict between <u>Atherton</u> and <u>Eel River</u> on federal preemption of CEQA." <u>December Decision</u>, slip op. at 5. The Board expressly stated that it was providing its interpretation of its governing statute "[b]ecause of the[] conflicting [state court] opinions regarding CEQA preemption and because the Board is 'uniquely qualified' to determine the preemption question." <u>Id.</u> at 7. The <u>December Decision</u> does not require dismissal of any litigation pending in the California courts. The fact that dismissal based on the <u>December Decision</u> *may* be sought and dismissal *may* be granted does not establish irreparable harm. A dismissal is merely one possible outcome. Moreover, even if the California court dismissed the cases based on the <u>December Decision</u>, Stay Petitioners would be able to appeal that dismissal and, thus, would have a remedy available to them. Therefore, Stay Petitioners have not shown that they would suffer irreparable harm absent a stay.

> I believe that Stay Petitioners have also failed to show a likelihood that they will prevail on the merits of any challenge to the <u>December Decision</u>. As explained above, my views on preemption are consistent with precedent and there is no interference with state sovereignty or state funding.

> Because I find that Stay Petitioners have not established either irreparable harm or a likelihood of success on the merits, the remaining stay criteria need not be addressed. <u>See Eighteen Thirty Group, LLC—In Allegany County, Md.</u>, FD 35438 et al., slip op. at 3 (describing irreparable harm as "the threshold consideration" for a grant of injunctive relief); <u>see</u>

---

[1] The motion for stay states that several of Stay Petitioners have state court litigation pending against the Authority relating to the application of CEQA. The motion also states that there are multiple suits in one court and that Stay Petitioners anticipate that the Authority will file a motion to dismiss those suits in that court. Stay Mot. at 4.

also Denver & Rio Grande Ry. Historical Found.—Pet. for Declaratory Order, FD 35496, slip op. at 2-3 (STB served Sept. 12, 2014) (denying petition for a stay due to petitioner's failure to show irreparable harm without discussing remaining three criteria for a stay); Ballard Terminal R.R., LLC—Lease Exemption—Line of Eastside Cmty. Rail, LLC, FD 35730, slip op. at 2 (STB served May 1, 2013) (denying petition for a stay due to petitioner's failure to show irreparable harm).  Therefore, I believe that the motion for a stay should be denied.

_____

VICE CHAIRMAN BEGEMAN, commenting:

It is no surprise that a majority decision was not reached to reverse course on the December Decision, which I opposed.  I supported granting the petitions for reconsideration and motion for stay.  Such actions would have enabled the Board to follow its own precedent while allowing the Authority to answer whether it will truly live up to commitments.[1]

As I noted in my dissent accompanying the December Decision, it is well within the Board's discretion to issue a declaratory order.[2]  Even if the Authority had actually sought the "categorical preemption" the Board gratuitously granted, the Board should have opted to leave that decision to the courts.[3]  The Board was well aware that questions of preemption were already in the state courts and that no court sought the Board's input on those questions.  As such, the Board should not have interfered with those proceedings just to make a questionable finding that no one even sought.

_____

[1]  The Authority has come before the Board many times asserting its commitment to both CEQA and NEPA.  This agency has adopted that commitment into its orders and many stakeholders have relied on the Authority's representations over the years.

[2]  See, e.g., 5 U.S.C. § 554(e); 49 U.S.C. § 721 (the Board has the discretion to grant or decline petitions for declaratory order).

[3]  It is well established that questions of federal preemption under 49 U.S.C. § 10501(b) can be decided by either the Board or the courts.  See, e.g., 14500 Ltd.—Pet. for Declaratory Order, FD 35788, slip op. at 2 (STB served June 5, 2014).

## CERTIFICATE OF SERVICE

I, Cynthia Kellman, hereby declare as follows:

I am a U.S. citizen; am over the age of 18 years and am not a party to the within action. My business address is 2200 Pacific Coast Highway, Suite 318, Hermosa Beach, CA 90254.

On June 11, 2015, I served the **PETITION FOR REVIEW** on the below parties to the proceedings before Respondent Surface Transportation Board by placing true copies thereof in sealed envelopes, addressed as shown, for collection and mailing during regular business hours and by placing a true copy with first-class U.S. postage, fully paid, in the U.S. mail at Hermosa Beach, California, or as specifically noted below, to the persons listed below:

Jessica Tucker-Mohl
Deputy Attorney General
Danae Aitchison
Deputy Attorney General
Office of The Attorney General
1300 I Street
P.O. Box 944255
Sacramento, CA 94224-2550
*Attorneys for California High-Speed Rail Authority*

James Andrews, Assistant Chief Counsel
California High-Speed Rail Authority
770 L Street, Ste. 800
Sacramento, CA  95814
*Attorneys for California High-Speed Rail Authority*

Michael M. Hogan
Hogan Law APC
225 Broadway, Ste 1900
San Diego, CA  92101
*Attorneys for County of Kern*

Jacqueline Ayer
2010 West Avenue K, #701
Lancaster, CA 93536

1

Kevin Sheys
Nossaman LLP
1666 K Street, N.W., Suite 500
Washington, D.C. 20006
*Attorneys for California High-Speed Rail Authority*

Charles Collins
Kern County Counsel
1115 Truxton Avenue, Fourth Floor
Bakersfield, CA 93301
*Attorneys for County of Kern*

Virginia Gennaro
1600 Truxtun Avenue, Fourth Floor
Bakersfield, CA 93301
*Attorneys for City of Bakersfield*

Jamie Hall
Channel Law Group, LLP
207 E. Broadway, Suite 201
Long Beach, CA 90802
*Attorneys for First Free Will Baptist Church of Bakersfield*

George F. Martin
Borton Petrini, LLP
5060 California Avenue, 7th Floor
P.0. Box 2026 (93303)
Bakersfield, CA 93309
*Attorneys for County of Kern*

Mary C. Alden Roar Foundation
601 West Fifth Street, Suite 1100
Los Angeles, CA 90071

Richard S. Edelman
Mooney, Green, Saindon, Murphy and Welch, PC
1920 L Street, NW, Ste. 400
Washington, D.C. 20036

Blaine Green
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94126-2824

2

CERTIFICATE OF SERVICE

Jason Holder
Holder Law Group
339 15Th Street, Suite 202
Oakland, CA 94612
*Attorneys for County of Kern*

Carol Bender
13340 Smoke Creek Avenue
Bakersfield, CA 93314

Honorable Jeff Denham
Subcommittee on Railroads, Pipelines, and Hazardous
Materials Committee On
Transportation and Infrastructure
U.S. House of Representatives
Washington, D.C. 20515

William C. Descary
604 Plover Court
Bakersfield, CA 93309-1336

Honorable Jim Costa
Congress of The United States
Washington, D.C. 20515

Honorable Janice Hahn
Congress of The United States
Washington, D.C. 20515

Honorable Zoe Lofgren
The United States House of Representatives
Washington, D.C. 20515

Diane L. Harkey
State Capitol
P.0. Box 942849
Sacramento, CA 94249-0073

Honorable Devin Nunes
U.S. House of Representatives
Longworth House Office Building,
Suite 1013
Washington, D.C. 20515

3

CERTIFICATE OF SERVICE

Honorable Kevin McCarthy
Congress of United States
2421 Rayburn House Office Building
Washington, D.C. 20515

Andy Vidak
13775 Lacey Boulevard
Hanford, CA 93230

Andrew Bluth
2600 Capital Avenue,
Suite 300
Sacramento, CA 95816

Michael S. Wolly
Zwerdling Paul Leibig Kahn & Wolly
1025 Connecticut Ave, N.W., Suite 712
Washington, D.C. 20036

Michelle Ouellette
Best, Best & Krieger
3390 University Avenue, 5th Floor
P.O. Box 1028
Riverside, CA 92502
*Attorneys for City of Shafter*

Honorable David G. Valadao
United States House Representatives
1004 Longworth House Office Building
Washington, D.C. 20515

Andrew Heglund
Andrew Heglund, Deputy City Attorney
City Of Bakersfield
1600 Truxtun Avenue, Fourth Floor
Bakersfield, CA 93301

Sarah E.Owsowitz
Best, Best & Krieger
2001 North Main Street, Suite 390

4

CERTIFICATE OF SERVICE

Walnut Creek, CA 94596
*Attorneys for City of Shafter*

Kathy Hamilton
121 Forest Lane
Menlo Park, CA  94025

Alan Scott
1318 Whitmore Street
Hanford, CA  93230

Scott A. Kronland
Altshuler Berzon Llp
177 Post Street, Suite 300
San Francisco, CA  94108

James G. Moose
Remy Moose Manley, LLP
555 Capitol Mall, Suite 800
Sacramento, CA  95814
*Attorneys for California High-Speed Rail Authority*


     I declare under penalty of perjury that the foregoing is true and correct.

     Executed at Hermosa Beach, California on June 11, 2015.


                    <u>s/ Cynthia Kellman</u>
                    Chatten-Brown & Carstens LLP

CERTIFICATE OF SERVICE